KISTEN, Administratrix, and others, Respondents, vs. KISTEN, imp., Appellant.

*February 28—April 11, 1939.*

24

For the appellant there were briefs by *Lewis W. Powell,* attorney, and *Hammond & Jones* of counsel, all of Kenosha, and oral argument by *Mr. Walter W. Hammond* and *Mr. Powell.*

For the respondents there were briefs by *Weisman & Weisman,* attorneys, and *Elmer D. Goodland,* guardian *ad litem,* all of Racine, and oral argument by *J. M. Weisman.*

NELSON, J. Prior to the time that these appeals were set down for argument, the plaintiffs moved to dismiss them on

the ground that the judgment of the circuit court had been fully complied with and satisfied before the appeals were taken; that the *res* covered by the judgment had been transferred and was then wholly under the jurisdiction of the county court of Kenosha county; that the defendant, Laura Kisten, had voluntarily accepted the benefits of the judgment and had therefore waived any right to question it by an appeal. The plaintiffs also moved to dismiss the appeal from the order dated July 2, 1938, for the reasons that the motions to vacate the judgment and for a new trial were not timely made, that the questions presented by those motions had been fully determined by the trial court on motions after verdict, and that that order is not appealable. The plaintiffs further moved to strike the bill of exceptions, settled in connection with the defendant's motions, or to limit its use to the appeal from the order denying the motion of the defendant, Laura Kisten, for a new trial on the ground of newly discovered evidence. The motion to dismiss the appeals from the judgment and the order, as well as the arguments on the merits, were heard on November 11, 1938. At that time no bill of exceptions had been settled in connection with the appeal from the judgment, the trial court having refused to extend the time in which to settle it. After reviewing all of the circumstances connected with the refusal of the trial court to extend the time in which to settle a bill of exceptions, we held, that in so refusing, the trial court had abused its discretion The order which denied an extension was reversed and the record returned to the circuit court to permit a bill of exceptions to be settled. Decision on the merits was reserved pending the settlement and return to this court of the bill of exceptions. 229 Wis. 479, 282 N. W. 629.

In a supplemental brief the plaintiffs again urge us to dismiss the appeals. The plaintiffs contend in support of their motion that prior to the taking of the appeals the judgment of the circuit court had been fully complied with and satisfied

and that there is nothing remaining for this court to act upon; that the *res* covered by the judgment and prior to the taking of an appeal, was transferred to and was wholly under the jurisdiction of the county court of Kenosha county, that the defendant, Laura Kisten, prior to the taking of an appeal voluntarily accepted the benefits of the judgment and thereby waived any right to question it on appeal and that it should also be held that she is estopped to question it. The several contentions are grounded upon the fact that after the questioned judgment was entered, the defendant, Laura Kisten, delivered the certificates of stock to the Northwestern Loan & Trust Company of Kenosha and applied to the county court of Kenosha county for a widow's allowance. The plaintiffs assert that the following facts justify the conclusions for which they contend: Charles Kisten died on July 17, 1936. Proceedings were thereafter taken resulting in the appointment of Hazel Marie Miller as special administratrix. The action was thereafter commenced. Judgment was entered on January 6, 1938, and notice of entry thereof served on January 10th. On January 25th, Northwestern Loan & Trust Company of Kenosha was appointed administrator. The certificates of stock issued by the Kenosha Building & Loan Association were delivered to the trust company mentioned on or about January 25, 1938. On March 11, 1938, certificates representing $1,500 of stock issued by Park City Building & Loan Association were voluntarily delivered to the administrator by the defendant, Laura Kisten, and since March 11, 1938, all of the building and loan association stock has been in the possession of and under the control of the administrator. On January 26, 1938, the defendant, Laura Kisten, filed a petition with the county court of Kenosha county for a widow's allowance. On January 28th, the attorneys for the plaintiffs, who are also the attorneys for the administrator, were served with a notice of hearing of said petition; that on March 4, 1938, notice was served upon

the adminstrator and its attorneys and others that the defendant, Laura Kisten, would apply to the county court on March 10, 1938, for an order allowing her a certain sum each month for her maintenance and for an order directing the administrator to pay to her a sum equal to all sums expended out of her personal estate for funeral expenses, expenses of last sickness of the deceased, and other sums paid by her in the conduct of her homestead. A hearing was thereafter had on March 10, 1938, which resulted in an order, retroactive to July 17, 1936, the date of the death of the decedent. The amount allowed was $40 per month, commencing on July 17, 1936, and continuing until March 1, 1937, and the sum of $50 per month, commencing on March 1, 1937, and continuing until her share of the estate is assigned to her or until the further order of the court. The administrator was ordered to pay for her maintenance out of the personal estate the sums specified and allowed. As to the sums expended by her for funeral and other expenses and offsets claimed by the administrator for moneys in her possession, it was ordered that they be held in abeyance until final account is filed and heard. The defendant, Laura Kisten, thereafter demanded of the administrator that the order for widow's allowance be complied with. The administrator, however, refused to comply with it excepting as to $200, which was a dividend paid on certain stock as of December 31, 1937. The asserted facts considered by themselves alone lend support to the contention that the defendant, Laura Kisten, voluntarily acquiesced in or ratified the judgment and therefore cannot appeal from it. 2 Am. Jur. 972, § 206. In 29 L. R. A. (N. S.) 2, the principle of law which the plaintiffs contend should be applied, is stated thus :

"It is the general rule that a litigant who has voluntarily, and with knowledge of all the material facts, accepted the benefits of an order, decree, or judgment of a court, cannot afterwards take or prosecute an appeal or writ of error to

reverse it. He will not be heard to say that it was erroneous. His conduct amounts to a release of errors. His acceptance of benefits is a waiver of all errors, and estops him to question the correctness and justice of the order, decree, or judgment which has given him such benefits."

Did the defendant, Laura Kisten, voluntarily and with knowledge of all the material facts accept the benefits of the judgment appealed from? It rather overwhelmingly appears from the affidavits of her attorneys, her own affidavit, and that of the president of the Northwestern Loan & Trust Company, that she did not voluntarily and with knowledge of all the material facts accept the benefits of the judgment. It appears from the affidavit of Mr. Hammond, one of her attorneys, that on January 10, 1938, she was ordered to surrender the old certificates for cancellation; that on January 11 or 12, 1938, he informed Mr. Weisman, one of the plaintiffs' attorneys, that motions to vacate the judgment and to set aside the findings were in contemplation and that an appeal would be taken if necessary; that he told Mr. Weisman that the defendant, Laura Kisten, and her attorneys were willing to have the certificates held by any disinterested person, and suggested that the Northwestern Loan & Trust Company be selected for that purpose; that Mr. Weisman approved of that arrangement; and that that arrangement was communicated to Mr. Powell, the defendant's other attorney, who stated that he would see to it that that was done. Mr. Hammond's affidavit concludes as follows:

"In suggesting that this be done there was no intention or purpose to comply with the judgment or accept it or satisfy the terms or provisions thereof. I had expressly told Mr. Weisman that we were not accepting the judgment and would appeal if we could not secure relief on motions after judgment. I suggested the Northwestern Loan & Trust Company to hold the certificates because it would be a disinterested person and also because leaving the certificates with it would not be in compliance with the judgment, which

directed that they be delivered to the clerk of court or direct to the building and loan associations."

In the affidavit submitted by Mr. Powell, it is stated:

"I have read the affidavit of Walter W. Hammond herein and am familiar with its contents. On or about January 11th or 12th he told me of his discussion with Mr. Weisman and suggested that I arrange to have the old building and loan certificates left with the Northwestern Loan & Trust Company in order to avoid further trouble and annoyance to Mrs. Kisten because of Mr. Weisman's threat of contempt proceedings if she did not deliver the old certificates pursuant to the judgment. I got in touch with Mrs. Kisten and told her to come in and bring the certificates for that purpose. She later told me that she had already taken them over and left them with the Northwestern Loan & Trust Company. At that time I understood that all of the certificates had been left there. Later I learned that she still was holding the certificates in the Park City Building & Loan Association and I promptly suggested that it also should be left with the said trust company."

Mr. Powell further stated that in doing this there was no intention to comply with the judgment; that at that time motions were being prepared and plans to appeal to this court if necessary were in contemplation. In reference to the proceedings taken by Mrs. Kisten in county court it appears that in her petition for a widow's allowance, which she first filed, she stated:

"That there is litigation pending with reference to the alleged assets of the decedent,"—

and that:

"All the alleged assets of the decedent were in fact held in joint tenancy with your petitioner and are now her individual property by survivorship."

The first order of the court, dated January 25, 1938, recited:

"It further appearing that there is litigation pending with reference to the alleged assets of the decedent and the peti-

tioner contends therein that all of the alleged assets of the decedent were in fact held in joint tenancy with the petitioner and are now her individual property by survivorship,"—

and provided that certain payments be made to Laura Kisten.

That order was vacated by consent and the petition thereafter heard on March 10, 1938. Mrs. Kisten appeared at that hearing and testified. She was asked:

"*Q.* What do you need?" and she answered:

"I need clothes occasionally and I got the car, I have to spend gas on the car and repairs and I paid $37 for insurance liability, insurance, etc. I need money. I got the money in the building and loan, everything is mine, property and money and everything is mine."

It appears from the affidavit of the defendant, Laura Kisten, that she had been informed by Mr. Powell, her attorney, that Mr. Weisman was threatening contempt proceedings if she did not surrender the certificates for cancellation, and that he advised her that he and Mr. Hammond had agreed to leave the certificates with the trust company as a disinterested person in order to save further trouble during the pendency of the motions to vacate the judgment and any appeal therefrom; that she personally took the Kenosha Building & Loan certificates to the trust company and talked to Mr. Thurn, the president thereof; that she pointed out to him that all of those certificates were payable to Charles Kisten and herself or the survivor; that she was the survivor; that the certificates were her property, and that she was not releasing or surrendering any claim thereto, and was leaving them with him on the advice of her attorneys; that she did not assign or release any of the certificates, and that the trust company receipted for them; that there was no intention on her part to waive an appeal or accept the judgment as final. In reference to the proceedings for a widow's allowance she states that she claimed in the county court that the certificates were hers, and in any event one third of their value was

hers; that her attorney made it clear to the county court that she was not accepting the judgment of the circuit court as valid and was contesting it and intended to appeal therefrom if necessary. As to the $200 paid to her by Mr. Thurn, the president of the trust company, on February 20th, she stated that she was advised that that money was not affected by the judgment which ordered that certificates be transferred to the estate; that she claimed the $200 dividend as her own and insisted on having it; that the $200 paid to her was represented by a check for $69.85, payable to the town treasurer which was used to pay her taxes and $130.15 cash. It appears from the affidavit of Mr. Thurn, the president of the trust company, that the stock certificates were delivered to him by Laura Kisten, and that at the time of delivery she expressly stated that all of them were her own property, and that she was not releasing or surrendering any claim thereto; that at no time since the delivery of said stock certificates has she indorsed or assigned them to the trust company; that on February 28, 1938, Laura Kisten asked him for the $200 dividend check which Mr. Weisman had obtained from the Kenosha Building & Loan Association and had delivered to the trust company; that Laura Kisten declared that this was her money and she insisted on having it for that reason; that he agreed to give it to her and she thereupon indorsed the check for the purpose of securing the cash thereon; that he gave her the check payable to the town treasurer mentioned in the affidavit of Mrs. Kisten and $130.15 in cash.

It very conclusively appears from the affidavits that all of the stock certificates were delivered to the trust company as a disinterested person rather than to it as administrator. It also appears that in petitioning the county court for a widow's allowance Mrs. Kisten was not acquiescing in or ratifying the judgment, but was simply taking steps to secure that to which she would be entitled as the widow of Charles

Kisten in the event of the judgment being affirmed on appeal. Whether the county court should have acted upon the application and entered an order pending the appeal may involve considerable doubt. It should be recalled that the judgment entered in the circuit court required that the certificates of stock should be delivered to the clerk of the circuit court or to the building and loan associations for cancellation. Obviously, delivering the certificates pursuant to an oral agreement to a disinterested person was in no sense a compliance with the judgment. Under all of the circumstances, we are of the opinion that it should not be held that the defendant, Laura Kisten, has waived her right to appeal.

We shall now consider the merits. As hereinbefore stated, the action was an equitable one in which an advisory verdict of a jury was taken. The jury found, in substance, that the joint tenancy in the real estate which constituted the homestead of the parties at the time of the death of Charles Kisten, was created by the voluntary act of Charles Kisten and with the full knowledge and understanding on his part that a joint tenancy was created and of the legal effect thereof; that the creation of the joint tenancy in the real estate was not brought about by the false and fraudulent representations made by the defendant, Laura Kisten, to Charles Kisten, but that the creation of said joint tenancy in the real estate was brought about by the undue influence of Laura Kisten upon Charles Kisten by coercion exercised upon him by her; and found the same things with respect to the building and loan stock which was held by them jointly. The court approved of and adopted the findings of the jury excepting its answers to questions 1 and 3. Question 1 was as follows:

"Was the creation of the joint tenancy in the homestead on the Cooper road the voluntary act on the part of Charles Kisten with full knowledge and understanding on his part at the time that said joint tenancy was created of the legal effect of such joint tenancy?"

The jury answered this question "Yes" and the court changed the answer to "No." Question 3 was similar to question 1, and related to the joint tenancy in the building and loan stock. The jury answered this question "Yes" and the court changed it to "No." The court thereupon made its own extended findings, and concluded that the joint tenancy in the real estate was brought about by the undue influence and coercion exercised upon the mind and will of Charles Kisten by the defendant, Laura Kisten, and that the said joint tenancy, at the time of its creation was null and void and of no effect; that title to said real estate in fee was vested in Charles Kisten and that he died seized thereof; that upon his death the title to the real estate vested in his heirs at law subject to administration by his personal representatives according to law. Similar conclusions were reached as to the building and loan stock. Many of the findings of the trial court are vigorously assailed and, in our opinion, rightly so. Excluding the incompetent, irrelevant, and hearsay evidence with which the record fairly teems, and considering only the evidence which the trial court properly should have considered, it appears that Charles Kisten and his first wife were divorced on or about January 13, 1917; that the care and custody of his two minor children were awarded to him; that the defendant, Laura Kisten (then Laura Zelder) had met Charles Kisten prior to his divorce; that for about two years before that time she held herself out to the public as a spiritualistic medium and was engaged in the business of giving spiritualistic readings for profit; that shortly after Charles Kisten obtained his divorce, the defendant, Laura Kisten, and Charles Kisten agreed to be married as soon as it was lawful to do so. In October, 1917, they purchased a home in Kenosha for $3,400. Laura Kisten contributed $2,000 of her moneys toward the purchase price, and a mortgage was given for the balance. The title was taken in the names of Laura Zelder and Charles Kisten in joint tenancy

and to the survivor. Laura Zelder moved into the house and two weeks later Charles Kisten went there to live as a boarder. Thereafter, on January 18, 1918, they were married. At the time Charles Kisten obtained his divorce it was necessary for him to cash a policy of insurance, supposedly in the amount of $1,000, from which he paid the first Mrs. Kisten $500 and the expenses of obtaining the divorce. At the time the real estate was purchased, the defendant, Laura Kisten, thought that since she had contributed the sum of $2,000 toward the purchase price the title should be taken in her name. Charles Kisten consulted a lawyer who advised him to put the property in joint tenancy and that was done. After their marriage the Kistens continued to live in that property for four or five years when they sold it at a profit of about $4,250. They then bought five acres of land on Cooper road and constructed a house thereon. The title to the Cooper road property was also conveyed to them in joint tenancy. From the date of their marriage up to the year 1931, Charles Kisten was employed as a foreman in a factory. He had a crew of fifty to sixty men under him. He earned wages ranging from $150 to $250 per month and occasionally received a bonus. The moneys so earned were in large part deposited in a bank and investments made in the stock of two Kenosha building and loan associations. The stock was issued in their joint names. Charles Kisten lost his job in 1931 and thereafter was unemployed. Besides owning $12,000 of building and loan stock, at that time they had about $3,000 in the bank. The money in the bank was gradually used up as well as $500 of the building and loan stock. At the time of his death in 1936, the stock owned by them amounted to $11,500. At the time of the marriage, Charles Kisten's son, Milo, was not living at home and his whereabouts at that time were not known. The daughter, Hazel, married in January, 1918, about the same time that her father, Charles Kisten, married. There is no basis in

the facts for the finding that the joint tenancy either in the homestead or the building and loan stock was the result of any undue influence or coercion practiced by Laura Kisten upon Charles Kisten. The only person who testified in regard to the creation of the joint tenancies in the real estate was Mrs. Kisten herself. No attempt was made by the plaintiffs to bring in the scriveners who had drawn the deeds. A secretary of one of the building and loan associations testified regarding the purchase of one of the certificates that it was issued in their joint names at the request of Charles Kisten. There was testimony given by Hazel Marie Miller and others tending to show that neither she nor her brother, Milo, during his lifetime, felt that they were welcome at the Kisten home. There was also testimony tending to show that Milo Kisten, the son, was at times in straightened financial circumstances and often sought aid from his father without particular results. There was also testimony based upon declarations made by the deceased in casual conversations with a few of his friends, not certainly fixed as to time, to the effect that he would like to leave something to his children, or that he would like to have his children have some part of his property. There is also testimony of declarations tending to show that, during the time of his unemployment, he was dissatisfied with the amounts of money that he was allowed to spend. Prior to his death he was confined to his home for a period of about seven months. Laura Kisten, his wife, took care of him. For seventeen years after her marriage to him she had been a Christian Scientist, and during his illness a practitioner was procured to treat him. About a week before his death, which was caused by cancer of the stomach, he was taken to a hospital. While there he was interviewed by his brother, who was told by Charles Kisten, according to the former's testimony, that the latter wanted to make arrangements to leave some of his property to his children. A lawyer was called in who talked the matter over with Charles Kisten. He returned the following day with a

deed which, if executed, would have conveyed Charles Kisten's half interest in the homestead and an assignment of his half interest in the building and loan certificates to his two children. At that time Charles Kisten was so far gone that he was unable to execute the documents.

In our opinion, the conclusions of the trial court that the joint tenancy in the real estate and in the building and loan stock were void *ab initio,* is so much against the great weight and clear preponderance of the evidence as to leave no reasonable basis upon which the findings of the court can rest. While there is evidence that Charles Kisten, while upon his deathbed, desired to convey and assign his interest in the real estate and building and loan stock to his children, there is no evidence that the defendant, Laura Kisten, was present at that time or did anything whatsoever to prevent him from executing the deed and assignment. While at that time he may have desired to convey and assign his interest in the properties held in joint tenancy, and might have done so had he lived and retained his faculties for a sufficient time, he nevertheless failed to do so. Until he was practically at death's door and subject to suggestions from his brother, no one ever heard him say that he desired to give to his children anything more than a part of his estate.

The trial court found that from a time prior to her marriage and up to the time of the death of Charles Kisten, the defendant, Laura Kisten, pursued a course of conduct calculated to deprive the children of any right to inherit from their father. The record, excluding the incompetent and hearsay evidence, does not support that finding. The mere fact that the properties were put in joint tenancy shows no such intention. At the time Charles Kisten married the defendant, Laura Kisten, he had little, if any, property. At the time of his death, aided by her contributions and as a result of her thrift and management, their joint properties were worth about $18,000. It is clear that the joint-tenancy arrangement was deliberately and understandingly entered into to

the end that the survivor would take the property. Had she predeceased her husband, all of the property in question would have gone to him as the survivor. To spell out of a holding of property in joint tenancy by a husband and wife fraud, undue influence, duress, and coercion is unreasonable and unjustifiable. In our opinion, the material findings of the trial court cannot be sustained.

In view of the fact that the judgment must be reversed, we deem it unnecessary to discuss the refusal of the court to grant the motions of the defendants to vacate the judgment upon the grounds hereinbefore recited.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.